# In the United States Court of Federal Claims

No. 19-1688C

(Filed: November 13, 2019)

```
*************************************
YOLANDA DENISE THOMPSON,          *
                                  *
              Plaintiff,          *
                                  *
v.                                *    Pro Se Plaintiff; Jurisdiction; Sua Sponte
                                  *    Dismissal
                                  *
THE UNITED STATES,                *
                                  *
              Defendant.          *
*************************************
```

Yolanda Denise Thompson, Philadelphia, PA, pro se.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

    This case arises out of pro se plaintiff Yolanda Denise Thompson's complaint concerning her ongoing criminal case and related bail conditions. Specifically, Ms. Thompson alleges that she cannot be subject to criminal prosecution because those involved in the case lack authority to prosecute or adjudicate the charges against her, and their insistence on doing so while subjecting her to bail conditions has resulted in a variety of compensable wrongs. The court, for the reasons discussed below, dismisses the complaint for lack of jurisdiction sua sponte.

## I. BACKGROUND

    On March 29, 2018, a grand jury in the Eastern District of Pennsylvania returned a nine-count indictment with respect to Ms. Thompson.[1] Specifically, the grand jury alleged that Ms. Thompson (1) conspired to defraud the United States by submitting fraudulent documents to the United States Internal Revenue Service and (2) aided and abetted in the preparation of fraudulent federal income tax returns. Ms. Thompson was arrested on July 25, 2018, and detained until her arraignment on August 2, 2018. During Ms. Thompson's arraignment in the United States District Court for the Eastern District of Pennsylvania ("District Court"), she was released on bail and ordered to, among other things, attend mental health services, submit to GPS

---

[1] The facts in this section are derived from the complaint (including attached exhibits), and matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

monitoring, surrender her passport, remain in the Eastern District of Pennsylvania, stay in her home (except in limited circumstances), and refrain from preparing any tax returns without prior approval. While free on bail, she is being supervised by the United States Pretrial Services for the Eastern District of Pennsylvania.

In her complaint, Ms. Thompson alleges that she never authorized those involved with her criminal case—who she calls "Traffickers" and identifies as federal prosecutors, federal judges, and others—to prosecute her or adjudicate charges against her.[2] Indeed, she states that "Traffickers are acting without authority or consent from [Ms. Thompson] . . . ." Compl. 3; accord id. at 4 (explaining that the "Traffickers are without authority to act as Attorney in Fact for [Ms. Thompson]" and "are committing fraud, identity theft, and trafficking of persons without [her] consent"). She also alleges that the Traffickers, by illegally prosecuting and restricting her freedom, are violating the Universal Declaration of Human Rights ("UDHR"). Additionally, she avers that

> [b]y intentional unjust conviction and imprisonment, Human trafficking in Person by force, fraud and coercion, isolating, enticing, transporting, holding, confining, harboring, profiting, soliciting, depriving liberty, threatening legal actions, psychological control, financial threats, legal harassment, withholding passport, threatening force, debt bondage, causing financial harm, kidnapping and abduction, abusing position of power . . . .

Id. at 11. She proceeds to state that government actors have committed or caused "intentional fraud, theft, battery, assault, financial losses, misrepresentation, false imprisonment, emotional infliction of mental distress, trespassing to land, trespassing to chattel and conversion and duress against [her] since the age of majority." Id. at 13. The court refers collectively to the purported wrongs identified in the prior two sentences as "Improper Conduct." Ms. Thompson concludes by requesting that the court (1) dismiss all of the cases against her for lack of jurisdiction, (2) release her immediately (apparently from her bail conditions given that she is not imprisoned), and (3) award her $10 billion for the Improper Conduct.[3]

---

[2] Ms. Thompson's complaint is replete with confusing statements that seemingly reflect concepts grounded in ideas espoused by Moorish sovereign citizens or similar movements. For example, she refers to herself as a trustee for "YOLANDA DENISE THOMPSON, [Personal Member Association]," Compl. 2, which is typical of sovereign citizens, see Bey v. State, 847 F.3d 559, 560-61 (7th Cir. 2017) ("Many sovereign citizen organizations teach that whenever a Moor's name is spelled in capital letters in a government document, the name identifies not the individual but instead his 'corporate shell identity' . . . ."). Although it is difficult to discern what Ms. Thompson is attempting to convey in the portions of the complaint that are more heavily steeped in sovereign citizen concepts, the court can parse the crux of the allegations and claims.

[3] Ms. Thompson also requests that Albert Upshur—an individual who the aforementioned grand jury indicted for the same conduct as Ms. Thompson—receive the same relief. Mr. Upshur, however, is not a plaintiff in this case.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014).

### B. Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter-jurisdiction at any time. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

### C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2018); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-

mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

### III. ANALYSIS

Ms. Thompson's complaint reflects her disagreement with the criminal process that she is currently subject to in the District Court. Specifically, she is alleging that she cannot be subject to bail conditions or criminal prosecution because she has not consented to the prosecutors' or judge's authority. This is, at bottom, a challenge to the validity of the criminal case and associated decision by the District Court judge to impose bail conditions. The Court of Federal Claims, however, lacks jurisdiction over challenges to criminal proceedings in a district court or disagreements with those courts' decisions.[4] See Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) (holding that the court lacks jurisdiction "to the extent that plaintiff is challenging his criminal trial . . . and the conduct of the government and its officers in connection with the prosecution of plaintiff in [district court]"); see also Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts . . . relating to proceedings before those courts."). Thus, the court lacks jurisdiction over Ms. Thompson's complaint.[5]

Additionally, notwithstanding the jurisdictional bar noted above, the court also lacks jurisdiction over individual portions of Ms. Thompson's complaint for different reasons. First, the court cannot entertain a claim based on Ms. Thompson's allegation concerning a purported UDHR violation because the UDHR "does not contain any substantive rights enforceable against

---

[4] Although the complaint is not clear, Ms. Thompson seemingly states that she is not responsible for the underlying criminal conduct—preparing fraudulent tax documents. See Compl. 6 ("Trustee deny being liable or responsible for the errors and omissions of any offeror partner of offeror, or their agents on behalf of YOLANDA DENISE THOMPSON agency / instrumentality of the United States . . . ."), 8 (alleging that "Trustee deny that Trustee received full disclosure regarding the underlying financial assets" or knew that financial information was being mispresented). If the complaint is read in that manner, the outcome remains the same because Ms. Thompson is still contesting the validity of a pending criminal case or the charges therein.

[5] Moreover, because Ms. Thompson seemingly relies throughout her complaint on theories associated with sovereign-citizen movements, supra note 2, it is also appropriate to dismiss the complaint for lack of jurisdiction because the claims are frivolous, United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous"); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) (explaining that sovereign citizen "theories should be rejected summarily, however they are presented"); see also Moden v. United States, 404 F.3d 1335, 1340 (Fed. Cir. 2005) (acknowledging that the Court of Federal Claims lacks subject-matter jurisdiction over a frivolous claim).

the federal government for money damages, as required by the Tucker Act . . . ."[6] Gimbernat v. United States, 84 Fed. Cl. 350, 354 (2008); see Phaidin v. United States, 28 Fed. Cl. 231, 234 (1993) ("The [UDHR] is an authoritative statement of customary international law . . . and the Tucker Act contains no language permitting the court to entertain jurisdiction over claims founded upon international customary law."). Second, Ms. Thompson's allegations of Improper Conduct reflect purported wrongdoings that sound in tort or involve criminal code violations (or both), and the court cannot exercise jurisdiction over claims premised on such conduct. Haka v. United States, 107 Fed. Cl. 111, 114 (2012) ("The court cannot decide [plaintiff's] . . . claims because they either involve criminal code violations or sound in tort."); see 28 U.S.C. § 1491(a)(1).

Finally, contrary to Ms. Thompson's representation in her complaint, the court cannot exercise jurisdiction over her claims based on 28 U.S.C. § 1495. Pursuant to that statute, the court can entertain "any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." The Court of Federal Claims can only adjudicate a claim on the aforementioned grounds "after a[nother] court has reversed a plaintiff's conviction on the grounds of innocence or . . . the President of the United States has pardoned the plaintiff." Phang v. United States, 87 Fed. Cl. 321, 330 (2009), aff'd sub nom. Phu Mang Phang v. United States, 388 F. App'x 961 (Fed. Cir. 2010); accord 28 U.S.C. § 2513. Ms. Thompson, however, does not identify any reversed or pardoned conviction, and the criminal docket for her case in the Eastern District of Pennsylvania reflects that she has not been convicted on the aforementioned charges. Thus, the court cannot exercise jurisdiction over Ms. Thompson's complaint based on § 1495.[7]

## IV. CONCLUSION

For the reasons explained above, the Court of Federal Claims lacks jurisdiction to entertain Ms. Thompson's claims. Accordingly, the court **DISMISSES** Ms. Thompson's complaint without prejudice. No costs. The clerk is directed to enter judgment accordingly.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order

---

[6] Ms. Thompson identifies the State of Pennsylvania as one of the "Traffickers" who was violating the UDHR but, in addition to its lack of jurisdiction over claims based on the UDHR, the court cannot entertain claims against a state. Trevino v. United States, 557 F. App'x 995, 998 (Fed. Cir. 2014) ("[T]he [Court of Federal Claims] lacks jurisdiction over [plaintiff's] claims against states . . . ."); see Moore v. Pub. Defs. Office, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.").

[7] To the extent that Ms. Thompson is asserting the same claims on behalf of Mr. Upshur, see supra note 3 (requesting relief for Mr. Upshur), the court lacks jurisdiction over such claims for the reasons stated with regard to Ms. Thompson's claims. Moreover, regardless of the jurisdictional barriers, Ms. Upshur cannot obtain relief via Ms. Thompson's complaint because he is not a party to the lawsuit.

would not be taken in good faith because, as asserted, Ms. Thompson's claims are clearly beyond the subject-matter jurisdiction of this court.

**IT IS SO ORDERED.**

                                                 MARGARET M. SWEENEY
                                                 Chief Judge